UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF MICHIGAN

MICHAEL ARVEY,

    Plaintiff,

v.

SANDRA LYNN FIELSTRA; and FRUIPORT
COMMUNITY SCHOOLS; and ROBERT
SZYMONIAK, and ROBERT ROGERS, and
LAUREN CHESNEY, and PROFESSIONAL
EDUCATIONAL SERVICES GROUP, LLC,
a Michigan Limited Liability Company,

    Defendants.

---

Joseph S. Bush (P55823)
Bush Law Offices, PLLC
Attorney for Plaintiff
318 Houston Avenue, Ste. 105
Muskegon, Michigan 49441
(231) 760-4490
joe@bushlawoffices.net

---

COMPLAINT AND JURY DEMAND

Introduction

1. Defendant Sandra Fielstra ("Fielstra") was employed by Professional Educational Services Group ("PESG") in 2014, and was placed in Fruitport High School, where she used her position to engage in illegal sexual contact with Plaintiff.

2. Despite reports of inappropriate conduct, the Fruitport School Defendants, as defined herein, took no action on their own to investigate Defendant Fielstra's conduct nor report it to the police and failed to place a barrier to prevent further contact between Plaintiff and Defendant

1

at school between Fielstra and Plaintiff, and chose only to let Fielstra's contract go unrenewed at the end of May, 2015.

3. Fielstra ultimately pled no contest and was convicted of criminal sexual conduct, second degree, involving Plaintiff and is currently serving a 30 month - 15 year sentence in Michigan State Prison.

4. Plaintiff's life spiraled out of control as a result of being sexually and mentally abused by Fielstra.

## Jurisdiction and Venue

5. This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1331 because this litigation involves matters of federal law, specifically claims made under the Education Amendments of 1972 (Title IX), 20 U.S.C. § 1681 *et seq.* and the Fourteenth Amendment to the United States Constitution (under 42 U.S.C. § 1983).

6. This Court has supplemental jurisdiction over the state law claims alleged herein pursuant to 13 U.S.C. § 1367, as it forms part of the same case or controversy stemming from the allegations that form the basis of the federal claims.

7. Venue in this District is proper as all Parties are located in this District and all the relevant facts occurred in this District.

## Parties

8. Plaintiff Michael Arvey is a resident of the State of Michigan, residing in Muskegon County.

9. Defendant Sandra Fielstra ("Fielstra") is a resident of Michigan, currently imprisoned at the Women's Huron Valley Correctional Facility in Washtenaw County, Michigan. At the time of Defendant Fielstra's assault of Plaintiff, Fruitport School Defendants employed Fielstra on a

contract basis and permitted her to volunteer in various capacities, allowing her access to Fruitport School Defendants' students, including Plaintiff.

10.     Defendant Fruitport Community Schools is a general powers school district pursuant to MCL 380.11a, which includes Fruitport High School, a public school in Muskegon County, Michigan.

11.     Defendant Fruitport Community Schools is a recipient of federal funds within the meaning of 20 U.S.C § 1681.

12.     Defendant Robert Szymoniak, is a resident of Muskegon County, Michigan, and is currently the superintendent of schools at Fruitport Community Schools, and is the Title IX coordinator for Fruitport Community Schools, and served in the same respective roles at the time Fielstra worked at Fruitport High School.

13.     Defendant Lauren Chesney, is a resident of Muskegon County, Michigan, and is currently the principal of Fruitport High School and served in that role at the time Fielstra worked at Fruitport High School.

14.     Robert Rogers, is a resident of Muskegon County, Michigan, and is currently a Vice-Principal at Fruitport High School and served in that role at the time Fielstra worked at Fruitport High School.

15.     The Fruitport School Defendants, namely, Fruitport Community Schools, Robert Szymoniak, Lauren Chesney and Robert Rogers violated Plaintiff's constitutional rights.

General Allegations

16.     Plaintiff attended Fruitport High School, during the 2014-2015 school year, his Sophomore, and turned sixteen on February 22, 2015.

17.     Defendant Fielstra, as a Secretary in the Guidance office used her position to sexually harass and groom Plaintiff during and after school hours, on school grounds, or during school activities, in order to sexually assault him.

18.     On information and belief, Fielstra provided Plaintiff, and other students with illegal drugs and alcohol so as to influence and groom Plaintiff, in order to sexually assault him.

19.     On information and belief, Defendant Rogers confiscated Plaintiff's phone in the Spring of 2015, noticing a text message between Plaintiff and Defendant Fielstra, which he thought to be unusual but did not report it to anyone.

20.     On information and belief, Defendant Rogers inquired of Fielstra why she was late on the night of the Fruitport High School prom where she was a chaperone, and she told him she was stuck at a friend's house and unable to leave.

21.     On information and belief, Defendant Rogers described Fielstra's behavior on prom night as "giddy".

22.     On information and belief, Defendant Rogers became aware after prom night that a Fruitport citizen named, Scott Wahr, had called the school to report that he saw Fielstra and Plaintiff parked in her car in front of his house for over a half hour on prom night.

23.     On information and belief, Scott Wahr, advised Fruitport High School officials that his son Trevor Wahr, had seen Fielstra and Plaintiff parked in the same location in her car in front of the Wahr residence on at least two prior occasions.

24.     Fielstra was sexually assaulting Plaintiff in her car when it was parked in front of the Wahr residence on each occasion.

25.     On information and belief, when Defendant Chesney interviewed Plaintiff to discuss the nature of his relationship with Fielstra after the Wahr complaint about prom night, Plaintiff's

phone began ringing and Defendant Chesney saw his phone and that Fielstra was calling him and upon information and belief, there would have been no plausible explanation to justify the student/staff contact.

26. Defendant Chesney did contact Plaintiff's mother and inquire if she was aware of the relationship, which she was not, and inquired about Plaintiff and Fielstra being seen in the same vehicle but they did not advise Plaintiff's mother that they were in the car together for over a half hour on prom night, that they had been witnessed in the same car, parked in the same location on multiple locations.

27. Plaintiff's mother inquired and Plaintiff notified her that Fielstra was friends with his friend's mother and was returning his phone charger that he had left at his friend's house and that since she was on her way to the prom to chaperone it was convenient to stop by around the corner so he met Fielstra to get his charger, which Plaintiff's mother found to be a plausible story given the extremely limited set of facts and circumstances Defendant Chesney shared with her.

28. Plaintiff's mother shared the false explanation she received from Plaintiff with Defendant Chesney and thought the matter was resolved because Chesney agreed she was going to provide Fielstra with guidelines for proper boundaries and conduct for contact with students.

29. On information and belief, a number of students had contacted Fruitport High School faculty, staff and administration to report an improper relationship between Plaintiff and Fielstra, before and after Fielstra worked at Fruitport High School, yet the Fruitport School Defendants failed and/or refused to contact the police or conduct an legitimate investigation consistent with Title IX requirements or otherwise notify and report everything they had discovered to Plaintiff's parents or to Child Protective Services, as per MCL § 722.623, school personnel are required to immediately make an oral report to Michigan's Department of Human Services, followed up by a written

5

report within 72 hours, upon reasonable suspicion of sexual abuse. Despite their suspicions, Defendants failed to make the required reports to the Department of Human Services.

30. Fruitport School Defendants showed deliberate indifference with regard to the reports and in making a woeful attempt to investigate the reports and claims surrounding the inappropriate and criminal relationship between Plaintiff and Fielstra.

31. Fielstra continued to contact Plaintiff and abuse him after she was no longer working in Fruitport High School, and forwarded Plaintiff a petition for him to file for emancipation from his parents via e-mail.

32. In August of 2015, Plaintiff finally broke down and admitted to his parents that he was having a sexual relationship with Fielstra that started at the end of February 2015, when Fielstra was still working at Fruitport High School. Plaintiff told his parents he believed that once Fielstra was divorced they would marry and asked if she could start coming over to his parent's home for holidays and family events.

33. Plaintiff's parents forbade him from seeing Fielstra when he disclosed the relationship to them, yet he secretly kept seeing her.

34. A few days after Plaintiff admitted the relationship to his parents, Fielstra's husband moved out of their marital home. Plaintiff was told by his parents again to have no further contact with Fielstra because they discovered he had been speaking to her and Plaintiff proceeded to attack his father with a baseball bat and then took the bat to his parents' Maserati and a work vehicle and was escorted from the premises by the police and then immediately moved into Fielstra's home.

35. Plaintiff's parents made a formal complaint to the Fruitport Police Department about their son's relationship with Fielstra within days of him moving out but Plaintiff, at Fielstra's direction and instruction, refused to admit to the police that he had a sexual relationship with her

while she was working for Fruitport High School. He was picked up as a runaway and brought home, but again Plaintiff left and moved into Fielstra's home.

36. Plaintiff dropped out of school at the beginning of the 2015-2016 school year and continued to live with Fielstra for approximately four months, but finally agreed to move back home with his parents because of the multiple legal issues he was facing as a result of the destructive behavior he was exhibiting, including malicious destruction of property, domestic assault, marijuana possession, minor in possession of alcohol, driving on suspended operator's license, and truancy.

37. Plaintiff continued to see Fielstra over his parent's objections when he first returned to his parent's home and told them he did not want to return to his school because the other students would tease and torment him and think he was a freak because they all knew about his relationship with Fielstra.

38. Plaintiff enrolled in an online school program in an attempt to continue his education through the end of the 2016 school year but continued to struggle with behavioral issues and resulting legal issues despite continuing to see Fielstra, and finally agreed to cooperate at the request of his father and tell the police the truth about his relationship with Fielstra.

39. In June of 2016, Plaintiff provided an accurate report to the Fruitport Police Department, admitting that Fielstra first had intercourse with him on February 28, 2015, some six days after his sixteenth birthday.

40. Plaintiff then agreed to allow the Fruitport Police Department to record his conversation with Fielstra, wherein she acknowledged that she had sexually abused Plaintiff as a result of the sexual relationship with Plaintiff that began while she was employed with PESG and working at Fruitport High School.

7

41. On or about August 1, 2016, Fielstra was charged with criminal sexual conduct, 3rd degree, by the Muskegon County Prosecutor's office, for sexually abusing Plaintiff.

42. August 3, 2016, Fielstra gave birth to a child and told Plaintiff it was his child.

43. On or about August 8, 2016, a newspaper article detailing the charges against Fielstra was published in the Muskegon Chronicle/MLive.com.

44. In response to the newspaper publication indicating a former temporary secretary from Fruitport High School had sexually abused a student, Defendant Szymoniak, published a response sent via electronic mail to parents of high school students registered on the school's e-mail notice list. However, Plaintiff's mother, who is on the e-mail notice list, did not receive the e-mail.

45. Upon information and belief, Defendant Szymoniak, and/or other Fruitport School Defendants intentionally excluded Plaintiff's mother from receiving the e-mail to avoid Plaintiff and his parents from seeing the false statement contained within the e-mail, in particular that the Fruitport School Defendants ended Fielstra's employment for poor job performance.

46. Defendants Szymoniak, Chesney and Rogers knew that Fielstra resigned her post in May of 2015, and admitted that to the Fruitport Police in August of 2015, yet Defendant Szymoniak and Fruitport Community Schools, represented that they had terminated Fielstra for poor job performance once the news of the sexual abuse that arose out of her contract employment at Fruitport Community Schools was published in the newspaper.

47. Plaintiff was teased and/or harassed by other Fruitport students and Fielstra's family after she was charged.

8

48. Fielstra pled no contest to one count of criminal sexual conduct, 2nd degree, on or about March 22, 2017, after the results of the paternity test indicated that Plaintiff was not the father of Fielstra's child.

COUNT I Battery (Defendant Fielstra)

49. Plaintiff incorporates all preceding paragraphs into this Count by reference as though fully restated herein.

50. Defendant Fielstra used her position of authority she was given by Fruitport Community Schools, to gain Plaintiff's trust.

51. During 2015-2016, Defendant Fielstra sexually assaulted Plaintiff and, as a direct and natural consequence of the assaults, caused Plaintiff's injuries including, without limitation, emotional distress, psychological trauma, and mortification.

52. As a direct and natural consequence of the assaults, Michael Arvey suffered injuries including, without limitation, emotional distress, psychological trauma, and mortification.

53. As a direct and proximate result of Defendant Fielstra's intentional and outrageous conduct, Michael Arvey sustained, and continues to sustain, injuries for which he is entitled to be compensated, including without limitation:

a. Past, present, and future physical and psychological pain, suffering, impairment, and mortification;

b. Medical bills, counseling, and other costs and expenses for past and future medical and psychological care;

c. Impaired educational capacity and future earning capacity;

d. Punitive and/or exemplary damages; and

Such other and further relief that this Court deems just and proper.

Count II

Intentional Infliction of Severe Emotional Distress (Defendant Fielstra)

54. Plaintiff incorporates all preceding paragraphs into this Count by reference as though fully restated herein.

55. Defendant Fielstra's conduct in sexually assaulting Plaintiff and then telling Plaintiff he was the father of her child was extreme and outrageous.

56. Defendant Fielstra's assault against Plaintiff was intentional.

57. Defendant Fielstra's supplying Plaintiff with illegal street drugs and alcohol was intentional.

58. Defendant Fielstra's intentional conduct was either intended to cause severe emotional distress or recklessly caused such distress to Plaintiff.

59. As a result of Defendant Fielstra's extreme and outrageous conduct, Plaintiff, Michael Arvey, suffered severe emotional distress.

60. As a direct and proximate result of Defendant Fielstra's intentional and outrageous conduct, Plaintiff, Michael Arvey sustained, and continues to sustain, injuries for which he is entitled to be compensated, including without limitation:

a. Past, present, and future physical and psychological pain, suffering, impairment, and mortification;

b. Medical bills, counseling, and other costs and expenses for past and future medical and psychological care;

c. Impaired educational capacity and future earning capacity;

d. Punitive and/or exemplary damages; and

e. Such other and further relief that this Court deems just and proper.

COUNT III

Violation of the Educational Amendments of 1972 (Title IX), 20 U.S.C. § 1981, et seq.

[Defendant Fruitport Community Schools, Defendant Szymoniak, Defendant Chesney, Defendant Rogers (Fruitport School Defendants)]

61. Plaintiff incorporates all preceding paragraphs into this Count by reference as though fully restated herein.

62. By its action and inaction after receiving reports of Defendant Fielstra's inappropriate behavior, including its action and inaction after Defendant Fielstra was arrested and charged with criminal sexual conduct, Fruitport School Defendants acted with deliberate indifference to Plaintiffs' rights to a safe and secure education environment. Fruitport School Defendants materially impaired Plaintiffs' access to educational opportunities and benefits at Fruitport Community Schools in violation of the requirements of Title IX by, among other things:

a. Failing to properly investigate reports of Defendant Fielstra's inappropriate contact with Plaintiff;

b. Failing to provide complete and accurate information to Plaintiff and/or Plaintiffs' parents regarding the reports and/or information received about Plaintiff's contact and communications with Defendant Fielstra;

c. Failing to investigate reports of Defendant Fielstra's sexual assault and take action to remedy the discrimination caused thereby;

d. Failing to provide, offer, recommend, or coordinate adequate health, psychological, counseling, and academic assistance and services to Plaintiff after he was sexually assaulted, exploited, and abused by Defendant Fielstra, or being deliberately indifferent thereto;

e.     Failing to take reasonable action to stop the retaliatory discrimination Plaintiff experienced at the hands of Defendant Fruitport Community School's students;

Failing to take actions required by Title IX to remedy the hostile environment, or being deliberately indifferent thereto;

63.    Fruitport School Defendants had actual notice and knowledge of Defendant Fielstra's discrimination against Plaintiff before, and certainly after, Defendant Fielstra's arrest.

64.    Fruitport School Defendants' personnel with actual notice of Defendant Fielstra's actions and discrimination, including Superintendent Szymoniak, Principal Chesney and Assistant Principal Rogers, had actual knowledge and the authority to take corrective action to minimize the harm suffered due to the discrimination, harassment, and chose not to do so.

65.    As a direct and natural consequence of Fruitport School Defendants' action, inaction, and deliberate indifference, Plaintiff, Michael Arvey suffered, and continues to suffer, injuries including, without limitation, emotional distress, psychological trauma, and mortification.

66.    As a direct and proximate result of School Defendants' action, inaction, and deliberate indifference, Plaintiff, Michael Arvey sustained, and continues to sustain, injuries for which she is entitled to be compensated, including without limitation:

a.     Past, present, and future physical and psychological pain, suffering, impairment, and mortification;

b.     Medical bills, counseling, and other costs and expenses for past and future medical and psychological care;

c.     Impaired educational capacity and future earning capacity;

d.     Punitive and/or exemplary damages; and

e.     Such other and further relief that this Court deems just and proper.

COUNT IV

Violation of Plaintiffs' Constitutional Rights, brought under 42 U.S.C. § 1983 (Fruitport School Defendants)

67. Plaintiff incorporates all preceding paragraphs into this Count by reference as though fully restated herein.

68. Fruitport School Defendants created a danger to students, including Plaintiffs, through its adoption and perpetuation of a practice and policy allowing Defendant Fielstra unrestricted and unsupervised access, under color of law, to court, harass and groom young men, including Plaintiff, while at school such which ultimately led to Plaintiff being sexually abused by Defendant Fielstra.

69. Fruitport School Defendants also had a duty to train Defendant Fielstra in appropriate conduct, practices, and procedures while interacting with young, male students.

70. Fruitport School Defendants also had a duty to train administrators and other employees, agents, faculty, and staff, regarding permissible conduct of someone like Defendant Fielstra, and on identifying, investigating, and stopping inappropriate conduct like that engaged in by Defendant Fielstra.

71. Fruitport School Defendants' adoption of practices, policies, and procedures that allowed Defendant Fielstra to harass and assault Plaintiff violated Plaintiffs' Constitutional rights including their right to bodily integrity and their property right in education.

72. Fruitport School Defendants' failures to train its employees and agents denied Plaintiff's Constitutional rights including their right to bodily integrity and their property right in education.

73. Fruitport School Defendants' had notice and knowledge of the dangers faced by its young male students and of Defendant Fielstra's inappropriate conduct.

74. Fruitport School Defendants were at all relevant times acting under color of law, are policy-makers with authority sufficient to make School Defendants liable for their actions or inactions that violated Plaintiff's Constitutional rights.

75. As a direct and natural consequence of Fruitport School Defendants' action, inaction, and deliberate indifference and violations of his Constitutional rights, Plaintiff, Michael Arvey suffered, and continues to suffer, injuries including, without limitation, emotional distress, psychological trauma, and mortification.

76. As a direct and proximate result of Fruitport School Defendants' action, inaction, and deliberate indifference and violations of her Constitutional rights, Plaintiff, Michael Arvey sustained, and continues to sustain, injuries for which he is entitled to be compensated, including without limitation:

a. Past, present, and future physical and psychological pain, suffering, impairment, and mortification;

b. Medical bills, counseling, and other costs and expenses for past and future medical and psychological care;

c. Impaired educational capacity and lost earning capacity;

d. Attorneys' fees and costs;

e. Punitive and/or exemplary damages; and

f. Such other and further relief that this Court deems just and proper.

## COUNT V

Violation of the Elliott-Larsen Civil Rights Act (Fruitport School Defendants and PESG)

77. Plaintiff incorporates all preceding paragraphs into this Count by reference as though fully restated herein.

78.     Fruitport School Defendants and PESG, had duties under the Elliot Larsen Civil Rights Act (ELCRA) not to discriminate and/or harass Plaintiff on the basis of sex and not to maintain a sexually hostile environment.

79.     Fruitport School Defendants and PESG's agent, were agents for Fruitport Community Schools in general for purposes of the duties described herein.

80.     Fruitport School Defendants and PESG violate those duties in the ways described above and discriminated against Plaintiff, Michael Arvey, based on his sex, causing him to suffer then and now emotional distress, psychological trauma, and mortification.

81.     As a direct and proximate result of Fruitport School Defendants' and PESG's violation of the above-described duties, Plaintiff, Michael Arvey sustained, and continues to sustain, injuries for which he is entitled to be compensated, including without limitation:

a.      Past, present, and future physical and psychological pain, suffering, impairment, and mortification;

b.      Medical bills, counseling, and other costs and expenses for past and future medical and psychological care;

c.      Impaired educational capacity and lost earning capacity;

d.      Attorneys' fees and costs;

e.      Punitive and/or exemplary damages; and

f.      Such other and further relief that this Court deems just and proper.

COUNT VI

NEGLIGENT HIRING SUPERVISION & RETENTION (Fruitport Community Schools and PESG)

82.     Plaintiff incorporates all preceding paragraphs into this Count by reference as though fully restated herein.

83.     PESG and contracting employer of Fielstra and Fruitport Community Schools, as party to contract for employment services with PESG for Fielstra to work in Fruitport High School, had a duty to Plaintiff and others to properly review and hire, supervise, train and retain contract employees that would not harm or otherwise harass and sexually abuse Plaintiff or other students.

84.     PESG and Fruitport Community Schools breached that duty by failing to properly review Fielstra's criminal and psychological background to ensure that she was not an unreasonable risk of harm to the children she would be exposed to at Fruitport High School.

85.     Had PESG and Fruitport Community Schools done a proper background check on Fielstra they would have and should have known that she was an unreasonable risk of harm to the children at Fruitport High School, including Plaintiff.

86.     Had PESG and Fruitport Community Schools property supervised and/or reviewed and investigated the improper and/or illegal behavior of Fielstra at the time it was brought to their attention, they would have and should have known that she was an unreasonable risk of harm to the children at Fruitport High School, including Plaintiff and removed her from her position.

 87.    PESG and Fruitport Community Schools breach of this duty was the proximate cause of Plaintiff, Michael Arvey's injuries sustained, and that he continues to sustain, for which he is entitled to be compensated, including without limitation:

a.      Past, present, and future physical and psychological pain, suffering, impairment, and mortification;

b.	Medical bills, counseling, and other costs and expenses for past and future medical and psychological care;

c.	Impaired educational capacity and lost earning capacity;

d.	Attorneys' fees and costs;

e.	Punitive and/or exemplary damages; and

f.	Such other and further relief that this Court deems just and proper.

## Prayer for Relief

Plaintiff demands judgment against Defendants as follows:

A.	Damages costs and attorney fees on Count I in excess of $1,000,000.00;

B.	Damages costs and attorney fees on Count II in excess of $1,000,000.00;

C.	Damages costs and attorney fees on Count III in excess of $1,000,000.00;

D.	Damages costs and attorney fees on Count IV in excess of $1,000,000.00;

E.	Damages costs and attorney fees on Count V in excess of $1,000,000.00;

F.	Damages costs and attorney fees on Count VI in excess of $1,000,000.00 and

All such other and further relief that is just and appropriate under the circumstances.

## Jury Demand

Plaintiffs demand trial by jury.

BUSH LAW OFFICES, PLLC

Dated: February 20, 2018

/s/ Joseph S. Bush (P55823)
Joseph S. Bush (P55823)
Attorney for Plaintiff
318 Houston Avenue, Ste. 105
Muskegon, Michigan 49441
(231) 760-4490
joe@bushlawoffices.net